**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| DYNAMIC DATA TECHNOLOGIES, LLC, | Case No. 2:18-cv-00464-RWS |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | **ORAL HEARING REQUESTED** |
| APPLE INC., | |
| Defendant. | |

**DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFF
DYNAMIC DATA TECHNOLOGIES, LLC'S FIRST AMENDED COMPLAINT FOR
PATENT INFRINGEMENT UNDER RULE 12(B)(6)**

# <u>TABLE OF CONTENTS</u>

Statement of Issues to Be Decided ................................................................................................. 1

Introduction .................................................................................................................................... 1

Legal Standards .............................................................................................................................. 2

Argument ........................................................................................................................................ 6

    I.  Dynamic Data's claims for direct patent infringement are not supported by facts that show a plausible cause of action. .................................................................................. 6

        A.  Dynamic Data's direct infringement allegations based on HEVC in Counts I, III, VI, VII, IX, XII and XIII are conclusory, unsupported by the HEVC standard, and fail to allege the presence of key limitations of the asserted claims. ...................... 7

            1.  Most of the allegedly HEVC-essential patents are directed to aspects of encoding video that are not specified or even peripherally constrained by HEVC. ................................................................................................................... 7

            2.  Dynamic Data's allegations related to the allegedly HEVC-essential patents based on "information and belief" fail to set forth a claim that is facially plausible. ................................................................................................................. 8

            3.  The Amended Complaint fails to plausibly allege any discernable theory of infringement for any allegedly HEVC-essential asserted patent. ................... 10

        B.  Dynamic Data's direct infringement allegations based on HLS in Counts IV and XI are conclusory, unsupported by the HLS standard, and fail to allege the presence of key limitations of the asserted claims. ............................................... 11

        C.  Dynamic Data's allegations in Counts II, V, VIII, and X of the Amended Complaint do not make out plausible claims because the facts do not support an inference that Apple infringes. ............................................................................. 13

    II.  Dynamic Data's allegations of indirect infringement are devoid of facts plausibly supporting an intent to induce infringement of the asserted patents. .......................... 17

    III.  Dynamic Data fails to allege facts that plausibly support willful infringement ......... 19

    IV.  Dismissal of Counts I, III, IV, VI, VII, IX, and XI–XIII should be with prejudice. .. 20

Conclusion .................................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................3, 4, 6

*Chapterhouse, LLC v. Shopify, Inc.*,
  No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)..............4, 14, 15, 16

*Content Guard Holdings, Inc. v. Amazon.com, Inc.*,
  No. 2:13-cv-1112-JRG, 2015 WL 1432158 (E.D. Tex. Mar. 30, 2015)....................................5

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ..................17, 18

*Corydoras Techs., LLC v. Apple Inc.*,
  No. 2:16-cv-00538-JRG, Dkt. 71, Order (Nov. 23, 2016) (E.D. Tex. 2016)..........................18

*Funk v. Stryker Corp.*,
  673 F. Supp. 2d 522 (S.D. Tex. 2009), *aff'd*, 631 F.3d 777 (5th Cir. 2011) ............................4

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S.Ct. 1923 (2016)................................................................................................6

*In re Superior Air Parts, Inc.*,
  486 B.R. 728 (Bankr. N.D. Tex. 2012), *aff'd sub nom.*
  *Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:13-CV-1162-L, 2014 WL
  1976757 (N.D. Tex. May 15, 2014)........................................................................................4

*Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.*,
  No. 2:10-CV-90-TJW, 2011 WL 1004873 (E.D. Tex. Mar. 18, 2011) ................................4, 9

*Jones v. Hartford Life & Accident Ins. Co.*,
  No. 2:16-CV-316, 2016 WL 5887601 (E.D. Tex. Oct. 7, 2016) ..............................................8

*Network Managing Sols., LLC v. AT&T Inc.*,
  No. 16–cv–295 (RGA), 2017 WL 472080 (D. Del. Feb. 3, 2017) ....................................9, 10

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
  No. 2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016)........................ *passim*

*Soverain IP, LLC v. Microsoft Corp.*,
  No. 2:17-CV-00204-RWS-RSP, 2018 WL 1465792 (E.D. Tex. Mar. 26, 2018)...............6, 19

*Stragent, LLC v. BMW of N. Am., LLC*,
    No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017)............4, 5, 6, 18

*T-Rex Prop. AB v. Regal Entm't Grp.*,
    No. 6:16-CV-1029-RWS-KNM, 2017 WL 4229372 (E.D. Tex. Aug. 31,
    2017), *report and recommendation adopted sub nom. T-Rex Prop. AB v.*
    *Regal Entm't Grp.*, No. 6:16-CV-1029-RWS-KNM, 2017 WL 4225441 (E.D.
    Tex. Sept. 22, 2017)................................................................................................6, 19

*United States ex rel. Marcy v. Rowan Cos., Inc.*,
    520 F.3d 384 (5th Cir. 2008) ................................................................................20

## Other Authorities

Fed. R. Civ. P. 8 ....................................................................................................12, 17

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 2, 21

Fed. R. Civ. P. 15(a)(2) ..............................................................................................20

Fed. R. Civ. P. 84 (former) ...........................................................................................4

## STATEMENT OF ISSUES TO BE DECIDED

This motion raises three issues to be decided:

1)      Whether the direct infringement allegations set forth in Dynamic Data
Technologies, LLC's First Amended Complaint for Patent Infringement ("Amended Complaint")
(Dkt. 20) fail to state a claim upon which relief may be granted under Federal Rule of Civil
Procedure 12(b)(6).

2)      Whether Dynamic Data pled facts sufficient to state claims for plausible indirect
infringement.

3)      Whether Dynamic Data pled facts sufficient to state plausible claims for willful
infringement.

## INTRODUCTION

Dynamic Data Technologies, LLC ("Dynamic Data") accuses Apple of direct and
indirect infringement of thirteen patents related to video encoding and decoding, graphics
processing, and video display technologies.[1]  The patents originated at Koninklijke Philips N.V.,
but Dynamic Data claims to have acquired them through intermediaries in April 2018.  In the last
quarter of 2018, Dynamic Data launched a sweeping litigation campaign, filing seven cases in
this District alone, and asserting many of the same patents against multiple makers of consumer
technology, including Apple.[2]  On January 11, 2019, Apple moved to dismiss the original

---

[1] Dynamic Data asserts U.S. Patent Nos. 8,135,073 (the "'073 patent"); 6,714,257 (the "'257 patent"); 8,073,054 (the "'054 patent"); 6,774,918 (the "'918 patent"); 8,184,689 (the "'689 patent"); 6,996,177 (the "'177 patent"); 8,311,112 (the "'112 patent"); 6,646,688 (the "'688 patent"); 7,894,529 (the "'529 patent"); 7,542,041 (the "'041 patent"); 7,571,450 (the "'450 patent"); the 7,982,799 (the "'799 patent"); and the 6,996,175 (the "'175 patent") (collectively, the "asserted patents").

[2] *See, e.g.*, *Dynamic Data Technologies, LLC v. Microsoft Corporation*, 2:18-cv-00469, Dkt. 1 (E.D. Tex. Nov. 6, 2018).  Dynamic Data asserts the same eleven patents (plus two more) against Microsoft that it asserts against Apple.

Complaint under Rule 12(b)(6) for its failure to allege facts sufficient to state a claim for infringement.  Dkt. 13.  Rather than respond to Apple's motion, Dynamic Data amended its complaint to add additional content and assert two new patents.  Dkt. 20.  Dynamic Data now alleges that seven of the asserted patents are standard-essential to High Efficiency Video Coding ("HEVC," also known as H.265), *see, e.g.*, Dkt. 20 ¶ 213, and that two other patents are essential to the HTTP Live Streaming ("HLS") protocol.  *See, e.g.*, *id.* ¶ 255.  Dynamic Data purports to support those allegations by citing supposedly "relevant" sections of HEVC, *see, e.g.*, *id.* ¶ 213, and including cut-and-paste content from the standards documents and third-party descriptions that allegedly relate to the asserted patents.  *E.g.*, *id.* ¶¶ 214, 256.  The volume of new content is a smokescreen, as Dynamic Data still fails to allege facts that add up to plausible causes of action.  Although the Amended Complaint now totals 152 pages, it still lacks specific facts showing how HEVC, HLS or the accused products map to any asserted claim.

Apple respectfully requests that the Court dismiss Dynamic Data's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), because Dynamic Data fails to state plausible claims for relief.  The direct infringement allegations are deficient because the Amended Complaint does not allege facts from which the Court could infer that Apple's products practice the asserted claims.  Apple further requests that the Court dismiss claims for induced and willful infringement in all Counts.  The inducement allegations are deficient because Dynamic Data does not plausibly allege any specific intent by Apple to induce infringement.[3]  Nor does Dynamic Data plausibly allege the notice or intent required for willful infringement.

## <u>LEGAL STANDARDS</u>

Pleadings under the Federal Rules of Civil Procedure must contain "a short and plain

---

[3] The indirect claims also fail because the direct infringement claims are not plausible and inducement requires a plausible claim of direct infringement.

statement of the claim showing that the pleader is entitled to relief, in order to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 545 (2007).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plausible claim "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556).  A complaint that pleads facts that are "merely consistent with" a

defendant's liability does not suffice because it "stops short of the line between possibility and

plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557 (brackets omitted)).

The "tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.*  If the factual allegations "do not

permit the court to infer more than the mere possibility of misconduct," *id.* at 679, then the

plaintiff has "not nudged [its] claims  across the line from conceivable to plausible." *Twombly*,

550 U.S. at 570.

In patent cases, "to state a claim for direct infringement, a plaintiff *must explicitly plead*

*facts* to plausibly support the assertion that the defendant 'without authority makes, uses, offers

to sell, or sells any patented invention during the term of the patent.'" *Ruby Sands LLC v. Am.*

*Nat'l Bank of Tex.*, No. 2:15-cv-1955-JRG, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016)

(emphasis added) (citations omitted).  If "the Court cannot make a plausible inference of direct

infringement based on the facts pleaded," it must dismiss the complaint.  *Id.* at *4.  Furthermore,

"cases involving more nebulous, less tangible inventions such as computer software methods

may require a higher degree of specificity to provide proper notice to the defendant." *Stragent,*

*LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697, at *2 (E.D. Tex. Mar. 3, 2017), *report and recommendation adopted*, No. 6:16-CV-00446-RWS, 2017 WL 2832613 (E.D. Tex. Mar. 27, 2017); *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018) (requiring more specific allegations when the asserted patents involved more complicated technology such as "hardware and software involved in an electronic transaction receipt system").

While courts in this District have permitted patent plaintiffs to plead infringement claims "on information and belief," those allegations must still meet the *Twombly* standard "requiring sufficient facts pleading to make a claim plausible."[4]  *Intravisual Inc. v. Fujitsu Microelectronics Am. Inc.*, No. 2:10-CV-90-TJW, 2011 WL 1004873, at *5 (E.D. Tex. Mar. 18, 2011).[5] "[A]llegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard."  *In re Superior Air Parts, Inc.*, 486 B.R. 728, 741 (Bankr. N.D. Tex. 2012), *aff'd sub nom. Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:13-CV-1162-L, 2014 WL 1976757 (N.D. Tex. May 15, 2014).  "[A]llegations based upon information and belief are particularly inappropriate in cases where the allegations are based on matters of public record."  *Funk v. Stryker Corp.*, 673 F. Supp. 2d 522, 525 (S.D. Tex. 2009), *aff'd*, 631 F.3d 777 (5th Cir. 2011).

When infringement is based on the implementation of a standard, at the pleading stage a patent owner "may rely on standard compliance to show infringement only if the patent covers

---

[4] While some courts have allowed plaintiffs to rely on "information and belief" allegations, Dynamic Data's Amended Complaint still stands out for the sheer volume (229 paragraphs) of such allegations.

[5] In *Intravisual*, the court found that the claims pleaded "on information and belief" were sufficient to state a claim under the model provided by former Federal Rule of Civil Procedure 84 and Form 18, which were abrogated in 2015.  *Intravisual Inc.*, 2011 WL 1004873, at *5. Pleadings based on Form 18 no longer suffice, and patent infringement claims must plead facts according to the *Twombly* standard.  *Ruby Sands*, 2016 WL 3542430, at *2.

every possible implementation of the standard." *Stragent*, 2017 WL 2821697, at *6 (recommending that the court grant defendants' motions to dismiss). To survive a motion to dismiss, a plaintiff must "plausibly plead a nexus between the [standard] and the asserted claims." *Id.* at *7. If a complaint "identifies no common element between the [standard] and the asserted claims, nor does it explain how the accused products, by complying with the [standard], also infringe the asserted claims," it must be dismissed. *Id.* at *5.

A claim of induced infringement must "(1) adequately plead direct infringement by a defendant's customers; (2) contain facts plausibly showing that the defendant specifically intended for its customers to infringe the asserted patents; and (3) contain facts plausibly showing that the defendant knew that the customers' acts constituted infringement." *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112-JRG, 2015 WL 1432158, at *2 (E.D. Tex. Mar. 30, 2015) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). Pleading knowledge of the patents and instructions to use an accused product is not enough to show specific intent, which requires showing both (1) knowledge of the patent, and (2) culpable conduct directed to encouraging another's infringement. *Ruby Sands*, 2016 WL 3542430, at *3. "The intent element of induced infringement requires that the accused inducer specifically intends for its customers to infringe the asserted patents; it is not enough that an accused inducer merely intends to cause others to perform certain acts which are ultimately found to infringe." *Stragent*, 2017 WL 2821697, at *9 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). "Generic allegations that [defendants] provide instructional materials along with accused products, without more, are insufficient to create a reasonable inference of specific intent for purposes of an induced infringement claim." *Id.* (citation omitted.)

5

To state a claim for willful infringement, a plaintiff must inform the defendant of the patents it is accused of infringing, allege facts sufficient to state a plausible claim for direct infringement, and allege that despite having knowledge of the patent, the defendant continued its infringing activities.  *T-Rex Prop. AB v. Regal Entm't Grp.*, No. 6:16-CV-1029-RWS-KNM, 2017 WL 4229372, at *10 (E.D. Tex. Aug. 31, 2017), *report and recommendation adopted sub nom. T-Rex Prop. AB v. Regal Entm't Grp.*, No. 6:16-CV-1029-RWS-KNM, 2017 WL 4225441 (E.D. Tex. Sept. 22, 2017).  After the Supreme Court's decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), this Court has required that "the complaint must adequately allege factual circumstances in which the patents-in-suit [are] called to the attention of the defendants."  *Soverain IP, LLC v. Microsoft Corp.*, No. 2:17-CV-00204-RWS-RSP, 2018 WL 1465792, at *2 (E.D. Tex. Mar. 26, 2018) (citations omitted).  While plaintiffs can claim post-suit willfulness based on a defendant's continued infringement after receiving a complaint, pre-suit willfulness requires pleading facts giving rise to a plausible inference of pre-suit knowledge of the patents.  *See T-Rex Prop. AB*, 2017 WL 4229372, at *10.

## ARGUMENT

Dynamic Data fails to state plausible claims for relief because the Amended Complaint does not contain explicit factual allegations that support an inference of direct infringement, let alone inducement or willful infringement.  *Twombly*, 550 U.S. at 556–57; *Ruby Sands*, 2016 WL 3542430, at *2.

### I.    Dynamic Data's claims for direct patent infringement are not supported by facts that show a plausible cause of action.

Dynamic Data's alleges direct infringement of its patents with three types of allegations.  First, Dynamic Data alleges that Apple infringes based on compliance with HEVC.  Second, Dynamic Data alleges infringement based on compliance with HLS.  Third, Dynamic Data

alleges that particular Apple products and software infringe without reference to any industry standard.  All of those allegations fail to state a claim for distinct, but overlapping and related reasons.

A. **Dynamic Data's direct infringement allegations based on HEVC in Counts I, III, VI, VII, IX, XII and XIII are conclusory, unsupported by the HEVC standard, and fail to allege the presence of key limitations of the asserted claims.**

In Counts I, III, VI, VII, IX, XII, and XIII of the Amended Complaint, Dynamic Data alleges direct patent infringement by virtue of Apple's implementation of HEVC.  Dkt. 20 ¶¶ 145, 213, 293, 321, 376, 459, 483.  Those claims for direct infringement fail for several reasons.  Most of the patents asserted in those Counts address functionality that is not part of the HEVC standard.  Yet, Dynamic Data pleads no other plausible basis on which the Court could plausibly infer that Apple infringes.  Further, Dynamic Data's conclusory allegations of infringement "on information and belief" are inappropriate for claims based on publicly available information—the asserted patents and the HEVC standard—and illustrate that Dynamic Data lacks any legitimate infringement theory.  Finally, for each asserted patent, Dynamic Data fails to plausibly allege how HEVC meets at least one key claim limitation.  In sum, Dynamic Data fails to put Apple on fair notice of its claims and the grounds upon which they rest because it is unclear how Dynamic Data believes its patents are infringed.

1. **Most of the allegedly HEVC-essential patents are directed to aspects of encoding video that are not specified or even peripherally constrained by HEVC.**

The '054, '177, '529, and '175 patents implicated in Counts III, VI, IX, and XII of the Amended Complaint relate to an aspect of video coding that is not specified in the HEVC standard.  Specifically, each of these patents is directed to the process of determining or estimating motion vectors, which are used in inter-frame predictive coding, a process which

occurs at an HEVC encoder, which the standard itself notes are excluded.  *E.g.*, Ex. A at 2–3

(excerpts from H.265, available at https://www.itu.int/rec/T-REC-H.265-201802-I/en) [6]

("Encoding algorithms (not specified in this Recommendation | International Standard) may

select between inter and intra coding for block-shaped regions of each picture.  Inter coding uses

motion vectors for block-based inter prediction to exploit temporal statistical dependencies

between different pictures."); '054 patent at Title ("Unit for and method of estimating a current

motion vector"), col. 4, lines 18–24 (for use in a video encoder, *e.g.*, MPEG encoder); '177

patent at Title ("Motion estimation"), '529 patent at title ("Method and device for determining

motion vectors"), col. 1, lines 13–15 ("This invention relates to . . . determining motion vectors

that are each assigned to individual image regions."); '175 patent at Title ("Motion vector

estimation"), col. 2, lines 8–9 ("Motion estimation is part of the inter-frame coding principle.").

However, the HEVC standard specifies only the content of an HEVC-compliant bitstream and

the process of decoding such a bitstream. Ex. A at 2, 6, 7.  HEVC specifies how motion vectors

are to be represented in a bitstream, but simply does not specify or constrain the process for

motion vector estimation or determination.  *Id.*  Because HEVC only defines how to decode

video signals, none of the allegations involving the '054, '177, '529, and '175 patents—which

allege only that the accused products implement HEVC—make out a plausible claim of

infringement for an encoder.

> **2. Dynamic Data's allegations related to the allegedly HEVC-essential
> patents based on "information and belief" fail to set forth a claim that is
> facially plausible.**

Furthermore, the crux of Dynamic Data's infringement allegations consist almost entirely

---

[6] The Court may consider materials attached to a motion to dismiss if they are referred to in the
plaintiff's complaint and are central to the plaintiff's claims.  *Jones v. Hartford Life & Accident
Ins. Co.*, No. 2:16-CV-316, 2016 WL 5887601, at *1 (E.D. Tex. Oct. 7, 2016).

of legal conclusions stated "on information and belief."  In each case, Dynamic Data alleges, on information and belief, that the accused products contain each claim limitation.  *See, e.g.*, Dkt. 20, ¶¶ 211–17, 219–23, 225–27 (for Count III); *see generally* Dkt. 20, ¶¶ 145–72 (Count I), 293–307 (Count VI), 321–28 (Count VII), 376–87 (Count IX), 459–67 (Count XII), 483–93 (Count XIII).  But allegations made on information and belief must still meet the *Iqbal*/*Twombly* standard, which requires pleading sufficient facts to make a claim plausible.  *Intravisual*, 2011 WL 1004873, at *5.

"On information and belief" allegations are particularly inappropriate here, where the grounds for Dynamic Data's allegations are publicly available.  *See Funk*, 673 F. Supp. 2d at 525.  Counts I, III, VI, VII, IX, XII and XIII first allege that certain Apple products implement HEVC (Dkt. 20 ¶¶ 138, 205, 288, 318, 366, 455, 499), then claim equivocally "on information and belief" that the patents are standard-essential (*id.* 20 ¶¶ 145, 213, 293, 321, 376, 459, 483), and then purport to make out a claim of infringement by comparing the asserted patents to the standard.  *Id.* ¶¶ 211–27.  The HEVC standard is freely available for download, as are the asserted patents.  Dynamic Data is fully capable of analyzing the standard to determine whether its patents are, in fact, standard-essential.  But, Dynamic Data cannot say for certain, instead equivocating "on information and belief."  Without such an allegation, Dynamic Data cannot get the benefit of accusing Apple's product based on alleged implementation of a standard while not stating any basis for infringement other than that alleged implementation.  Instead of hiding behind improper allegations based "on information and belief," Dynamic Data should have performed a proper pre-suit infringement analysis and determined whether the asserted patents were in fact standard-essential based on the available public records.  Dynamic Data's failure to perform the necessary pre-suit investigation or let alone take a position on this threshold issue,

however, shows that these claims are not plausible.

The allegations in Dynamic Data's complaint are similar to those dismissed in *Network Managing Solutions, LLC v. AT&T Inc.*, No. 16–cv–295 (RGA), 2017 WL 472080, at *1 (D. Del. Feb. 3, 2017).  In that case, the complaint alleged, on information and belief, that the standards at issue incorporated the technologies covered by the patents.  *Id*.  The court found those allegations insufficient and incomplete because the "[p]laintiff knows its own patents" and "the standards are public."  *Id.*  Dynamic Data has created the same situation here.  By its own allegations, it has all of the information to make out a plausible case yet fails to do so.

### 3. The Amended Complaint fails to plausibly allege any discernable theory of infringement for any allegedly HEVC-essential asserted patent.

Moreover, the Amended Complaint fails to plead plausible infringement for any of the allegedly HEVC-essential asserted patents.  In each Count, Dynamic Data fails to plausibly allege that any aspect of HEVC meets the central and key claim limitations.

For example, among other deficiencies, Dynamic Data fails to plausibly allege in Count III that any aspect of HEVC meets the limitation: "add a further candidate motion vector to the set of candidate motion vectors by calculating the further candidate motion vector on basis of a first motion vector and a second motion vector" in claim 1 of the '054 patent.  Dynamic Data mentions that limitation in paragraphs 222 and 223 of the Amended Complaint, but there is no factual allegation that supports Dynamic Data's conclusory allegation (on information and belief) that such a limitation is present in HEVC.  Dkt. 20 ¶¶ 222, 223.  The only possible factual content Dynamic Data includes is a quotation from a book by Gary Sullivan *et al.* discussing how motion vectors are encoded in an HEVC-compliant bitstream.  *Id.* ¶ 223.)  That quotation mentions "two spatial MVP candidates," but lacks any explanation about how a further candidate motion vector is calculated based on them.  *Id.*

For claim 1 of the '177 patent (Count VI) of the Amended Complaint, Dynamic Data fails to plausibly allege that any aspect of HEVC meets: "determining at least a most frequently occurring block-based motion vector," "carrying out a global motion vector estimation process . . .," or "applying the global motion vector as a candidate vector . . . ."  Dynamic Data mentions global motion vectors in paragraphs 307–09 of the Amended Complaint, but none of the factual assertions have any discernable relationship to a "global motion vector."  Paragraph 307 discusses how motion vectors are represented in an HEVC-compliant bitstream by reference to various candidate motion vectors from spatially and temporally related blocks.  Dkt. 20 ¶ 307. Paragraph 308 includes a block diagram annotated to indicate "Final Motion Compensated Prediction" without any explanation about how that block relates to a global motion vector.  *Id.* ¶ 308.  And, similar to paragraph 307, paragraph 309 discusses how motion vectors are signaled in the bitstream by reference to certain probable candidates.  *Id.* ¶ 308.  Dynamic Data's infringement theory is simply incomprehensible on these allegations.

For claim 1 of the '529 patent (Count IX), the Amended Complaint lacks allegations regarding: "determining at least a second image block through which the motion vector assigned to the first image block at least partially passes . . .," among other limitations.  Dynamic Data mentions that limitation in paragraph 384 of the Amended Complaint, but without explaining which aspect of HEVC allegedly meets it.  *Id.* ¶ 384.  The remainder of that paragraph states the unremarkable proposition that HEVC uses motion compensation and motion vectors, as does any modern video encoder.  *Id.*

### B.  Dynamic Data's direct infringement allegations based on HLS in Counts IV and XI are conclusory, unsupported by the HLS standard, and fail to allege the presence of key limitations of the asserted claims.

Counts IV and XI of the Amended Complaint, which are based on HLS, fail to state a claim for reasons similar to the HEVC Counts.  Like the other counts in the Amended

Complaint, Dynamic Data qualifies all of the central infringement allegations with "on information and belief," notwithstanding the fact that HLS is a free and publicly available protocol.  Dkt. 20 ¶¶ 241–57, 431–43.  Like the HEVC Counts, Dynamic Data pleads, on information and belief, that the '918 and '450 patents are necessarily infringed by implementations of HLS.  Dkt. 20 ¶¶ 255, 437.  The "on information and belief" qualification is telling.  Again, Dynamic Data has all of the information it needs to plead a standard-essential infringement theory but still feels the need to equivocate.  These allegations evidence either a failure to conduct an adequate pre-suit investigation or a meritless infringement read.  Counts IV and XI of should be dismissed for this reason alone.

In addition, Dynamic Data fails to plead facts showing how the accused products perform central limitations of the asserted claims.  In Count IV, Dynamic Data alleges infringement of claim 18 of the '918 patent.  Dkt. 20 ¶ 255.  That claim requires, among other things, "downloading on-screen display (OSD) data for generating an image on a display device" and "during a gap in said downloading of said OSD data, downloading an amount of overlay data for generating an overlay on said image."  '918 patent, col. 11, line 38–col. 12, line 2; *see also* Dkt. 20 ¶¶ 242, 248.  Dynamic Data has not identified those claim limitations in the accused system.  Instead, Dynamic Data first alleges that on-screen display data includes captions or subtitles.  Dkt. 20 ¶¶ 242, 243.  Then, Dynamic Data alleges that the "overlay" is "a cursor, closed captions, or subtitles."  Dkt. 20 ¶ 248.  There is no allegation that HLS includes a cursor. *See* Dkt. 20 ¶¶ 237–64 (no other mention of cursor).  As for the "closed captions" or "subtitles," Dynamic Data's allegations point to those types of data as both on-screen display data ***and*** overlay data.  But the claims of the '918 patent clearly differentiate them.  The overlay data must be downloaded during a gap in downloading on-screen display data.  *E.g.*, '918 patent, col. 11,

12

line 38–col. 12, line 2.  Count IV fails the basic notice function of Rule 8 because Dynamic Data alleges, essentially, that HLS downloads data, without addressing the difference between on-screen display data and overlay data, which is a key point of the '918 patent.  '918 patent, col. 2, lines 12–20.

Similarly, Dynamic Data's allegations in Count XI are not plausible and fail to put Apple on notice of its claims, because it is impossible to tell which aspect(s) of HLS are supposedly "services" and "data-elements."  In Count XI, Dynamic Data alleges infringement of claim 8 of the '450 patent.  Dkt. 20 ¶ 437.  That claim requires, among other things, "receiving a transport stream comprising services," "filtering to select a data-element of a first one of the services . . .," "switching from the first one of the services to a second one of the services," and "filtering to select a second data-element of the second one of the services . . . ."  '450 patent, col. 8, lines 17–39; *see also* Dkt. 20 ¶¶ 438, 440, 442.  Similar to Count IV, Dynamic Data has not identified those claim limitations in the accused system.  While Dynamic Data mentions the claim term "services" in several paragraphs of the Amended Complaint, nowhere does it identify what "services" it believes infringe its patent.  *Id.* ¶¶ 433–35, 438, 440, 442, 443.  The same is true for "data-elements."  Nowhere does Dynamic Data identify what aspect of HLS it believes constitute "data-elements."  *Id.* ¶¶ 435, 438, 440–43.

C.    **Dynamic Data's allegations in Counts II, V, VIII, and X of the Amended Complaint do not make out plausible claims because the facts do not support an inference that Apple infringes.**

Dynamic Data's direct infringement claims in Counts II, V, VIII, and X fail because Dynamic Data does not plead any *facts* regarding how Apple's products contain or practice the limitations of the patent asserted in those Counts.  Instead of pleading facts showing any nexus between the accused products and the asserted claims, Dynamic Data simply parrots claim language and asserts, on information and belief, that Apple's products practice the patents but

13

without explaining how any product feature infringes.  Dynamic Data does not allege that these

patents are essential to any standard, but instead purports to make out infringement theories

based on screenshots from Apple documentation.  *E.g.*, Dkt. 20 ¶¶ 349, 352, 354, 356.  The

screenshots have no specific relation to Dynamic Data's infringement theories and therefore do

not support any plausible claim.

In Count VIII, Dynamic Data asserts that Apple sells products with "chroma key

capabilities," including Final Cut Pro X, and that these products include "technology for image

processing."  Dkt. 20 ¶ 347.  However, Dynamic Data's allegations and citations don't address

how the accused feature meets the claim language.  The '688 patent relates to a processing

pipeline suitable for high quality video and graphics processing, in which "color key extraction is

performed before actual processing and transforming of the video/graphics data."  '688 patent,

col. 1, lines 39–44; *see also* Dkt. 20 ¶¶ 83–85.  The '688 patent does not purport to have invented

color key functionality, but instead discloses and claims a purported improvement to that

technology.  '688 patent, col. 2, lines 59–61 (stating that the invention "performs standard color

key extraction").  The claims of the '688 patent require, among other things, "(b) processing a

color key from the pre-processed data to output resulting data . . . wherein step (b) includes a

step of substituting the color key with a pre-selected color."  '688 patent, col. 4, lines 37–46; *see*

Dkt. 20 ¶¶ 354, 355.  Dynamic Data does not allege any facts providing any basis to believe

Final Cut performs such an operation.  The allegations in paragraphs 354–35 relate to Final Cut

Pro's chroma keying operation, which entails replacing a color key with another image.  *See*

Dkt. 20 ¶ 349.  But there is no indication that any Apple product "includes a step of substituting

the color key ***with a pre-selected color***."  '688 patent, col. 3, lines 61–62.  Dynamic Data does

not explain how its allegations relate to that limitation and no connection is readily apparent.  *See* Dkt. 20 ¶ 354–56.

These allegations are similar to the complaint that this Court dismissed in *Chapterhouse*. 2018 WL 6981828, at *1.  The plaintiff in that case simply stated the claim language and pasted screenshots, without any factual allegation linking the two.  *Id.* at *2.  This Court found that "[s]uch a statement, on its own, is a mere conclusory statement, and in order to pass the *Iqbal/Twombly* standard, there must be accompanying factual allegations."  *Id.*  Paragraphs 354 and 356 follow exactly the format this Court ruled insufficient in *Chapterhouse*.  Paragraph 355 has one additional statement, but that statement does nothing to explain how the product meets the claims.  To the contrary, that paragraph describes "creat[ing] a key," not substituting the color key with a pre-selected color.  Dkt. 20 ¶ 355.

The other Counts are no better.  For the '257 patent (Count II), each of the allegations regarding the asserted claim are qualified "on information and belief," despite Dynamic Data's own allegations that (1) that it has access to the 476-page user guide for the accused product and (2) that the accused product is available for purchase by the general public.  *See, e.g.*, Dkt. 20 ¶¶ 186 (excerpt from user guide), 199 (available for purchase).  And, Dynamic Data still omits allegations regarding a central aspect of the claims.  The '257 patent purports to solve various problems in the prior art by "independently scaling the color-keyed regions and the non-color-keyed regions [and] subsequently merg[ing] [them] to form a scaled color-key image with clearly distinguished color-keyed regions and non-color-keyed regions."  '257 patent, col. 2, lines 57–62.  That operation appears in each independent claim.  *E.g.*, '257 patent, col. 8, lines 20–29 (claim 9 including "scaling . . .," "scaling . . .," and "merging . . ." steps).  Dynamic Data does not allege any facts from which the Court can plausibly infer that the accused product

performs that function. *See* Dkt. 20 ¶¶ 192 (describing the process of modifying the color key),

193 (resizing the *entire* video clip together), 194 (resizing the *entire* foreground object together).

In Count V, Dynamic Data again qualifies each of the allegations for the asserted claim

of the '689 patent "on information and belief." Dkt. 20 ¶¶ 271–76. Three of the allegations

contain no factual support at all. *Id.* ¶¶ 271, 273, 276. The allegation in paragraph 275 is

precisely the type that this Court found insufficient in *Chapterhouse* because there is no

allegation connecting the picture to the allegation. *Id.* ¶ 275. The only other factual allegations

simply stand for the uncontroversial proposition that Apple products encode and decode video.

*Id.* ¶¶ 272, 274. Clearly, the '689 patent did not invent encoding or decoding video, *see* '257

patent, col. 1, lines 8–17 (describing prior art video encoding standards), and allegations that

Apple performs those actions are insufficient to state a plausible claim.

Following the pattern of its other Counts, Dynamic Data makes each of its allegations on

the '041 patent (Count X) "on information and belief." Dkt. 20 ¶¶ 403–17. Dynamic Data also

fails to point out any aspect of the accused instrumentality that comprises an "auxiliary element,"

which is, allegedly, one of the key features of the invention. *See id.* ¶¶ 99–105 (Dynamic Data's

description of its own patent); '041 patent, col. 4, lines 49–52 (claim 1 includes "a plurality of

auxiliary elements"). Of the six paragraphs in Count X that mention the claim term "auxiliary

element," five contain no factual support whatsoever (Dkt. 20 ¶¶ 404, 406, 407, 416, 417) and

the other is a *Chapterhouse*-type allegation in which a website screenshot is pasted with no

alleged *factual* connection. *Id.* ¶ 412. Dynamic Data cannot plausibly allege infringement while

omitting any factual allegation whatsoever on a claim element that Dynamic Data itself alleges is

central to the invention. *Id.* ¶¶ 99–105.

16

## II.      Dynamic Data's allegations of indirect infringement are devoid of facts plausibly supporting an intent to induce infringement of the asserted patents.

Dynamic Data's indirect infringement claims fail because Dynamic Data (1) does not adequately plead direct infringement, and (2) does not plead facts sufficient to plausibly allege Apple's specific intent for its customers to infringe.  "Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Ruby Sands*, 2016 WL 3542430, at *3 (dismissing induced infringement claim for failure to state a claim) (internal quotations omitted). "[F]ailing to allege any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner, falls short of satisfying Rule 8's notice requirement." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015) (dismissing an inducement claim that failed to identify how the materials instructed users to infringe).  "In other words, generic allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim." *Id.*

Dynamic Data's indirect infringement claims fail for all patents, for two reasons.  First, as discussed above, Dynamic Data does not plausibly plead direct infringement.  Therefore, its indirect infringement claims fail on this basis alone.  Second, Dynamic Data fails to plead facts supporting the necessary element of specific intent.  Each allegation of indirect infringement is repetitive and formulaic, reciting the bare elements of the claim but lacking any factual allegations to support them.  *See* Dkt. 20 ¶¶ 178, 199, 261, 282, 313, 341, 360, 393, 423, 449, 473, and 499.

Dynamic Data claims that Apple provides products that "have the capability of operating in a manner that infringe one or more claims of the [] patent," and that "Apple further provides documentation and training materials that cause customers and end users" to use the products in a way that infringes the patents. *Id.* The materials that Apple allegedly provides consist of "user manuals, product support, marketing materials, and training materials," *id.*, and for each claim Dynamic Data includes a footnote referencing various Apple user guides available on the Internet. *Id.* Dynamic Data cites to certain Apple instructional materials, such as the iPhone User Guide and Apple Help website (Dkt. 20, nn. 26, 30–32, 36, 38, 41–43), and Final Cut Pro X User Guide (Dkt. 20, nn. 27, 39). But these citations do not give rise to a plausible inference of specific intent, because Dynamic Data does not point to any specific content of those instructional materials that allegedly instructs users to infringe the asserted patents. These are exactly the type of "generic allegations that an alleged infringer provides instructional materials along with the accused products" that this Court found deficient in *Core Wireless*. 2015 WL 4910427, at *4. And, the Complaint reiterates the exact same instructional materials for multiple patents without reference to content tied to any particular feature or function, rendering it implausible that these instructional materials show Apple's specific intent to induce infringement of all asserted patents.

Dynamic Data's pleading of specific intent boils down to allegations that Apple provides instructional materials that accompany the accused products. This is insufficient to state a claim for indirect infringement. *Stragent*, 2017 WL 2821697, at *9. Dynamic Data simply does not plead any factual allegations showing "culpable conduct" or plausible specific intent. Its claim

for inducement infringement should fail for this reason too.[7]

### III.    Dynamic Data fails to allege facts that plausibly support willful infringement

Dynamic Data's willful infringement claims fail because Dynamic Data does not state a

plausible claim for direct or indirect infringement.  Even if it did state a direct infringement

claim, however, Dynamic Data does not state a claim for pre-suit willful infringement because it

does not plead facts showing that Apple had pre-suit notice of the asserted patents.  *See T-Rex*

*Prop. AB*, 2017 WL 4229372, at *10 (dismissing pre-suit willfulness claims when the plaintiff

stated no facts showing defendant's pre-suit knowledge of the asserted patents).  In *T-Rex*, the

plaintiff pleaded that the defendant had constructive knowledge or was willfully blind, but this

Court found these conclusory statements insufficient without supporting facts.  *Id.*  This Court

further found that it is "unclear whether a plaintiff may plead allegations of 'constructive

knowledge' to support a claim for willful infringement," but that in any case an assertion of

constructive knowledge must be accompanied by supporting facts.  *Id.* at *10 n.11.

When this Court has denied a motion to dismiss willful infringement claims, it has been

because there were specific factual assertions demonstrating the defendant had actual knowledge

of the asserted patents.  *See, e.g.*, *Soverain*, 2018 WL 1465792, at *2.  In *Soverain*, the plaintiff

alleged both that the asserted patents were well known within the e-commerce industry and that

they were cited in more than 6,000 issued U.S. patents and published applications as prior art,

including by the defendant in eleven of its own applications.  *Id.* at *1.  In denying dismissal, the

Court did *not* rely on the allegations that the patents were well known, but *did* find that since the

---

[7] Even if Dynamic Data adequately pleaded indirect infringement, its damages must be limited to
post-filing conduct because it did not plead pre-suit knowledge of any of the asserted patents.
*See* Dkt. 20, ¶¶ 177, 198, 232, 260, 281, 312, 340, 359, 392, 422, 448, 472, and 498; *Corydoras
Techs., LLC v. Apple Inc.*, No. 2:16-cv-00538-JRG (Lead), Dkt. 71, Order at 5 (Nov. 23, 2016)
(E.D. Tex. 2016) ("Since there is no allegation [of] pre-suit knowledge of the patents-in-suit,
[plaintiff's] indirect infringement claims must be limited to post-filing conduct.").

defendant had cited them as prior art, it was inherent in the plaintiff's allegations that defendant knew of the patents, and with that knowledge chose to practice the patent without a license.

Dynamic Data's pre-suit willfulness claim fails because it does not plead facts showing Apple's pre-suit knowledge of the asserted patents.  Dynamic Data does not allege that Apple knew of the patents before the Complaint was served.  *See* Dkt. 20, ¶¶ 177, 198, 232, 260, 281, 312, 340, 359, 392, 422, 448, 472, and 498.  While the Complaint alleges that each patent has been cited as prior art multiple times in various patents and patent applications, Dynamic Data does not allege that *Apple* has cited any of these patents before.  Simply put, Dynamic Data does not allege facts giving rise to an inference that Apple was on notice of any of the asserted patents before this lawsuit was filed.  Therefore Dynamic Data has failed to state claims for pre-suit willful infringement of any of the asserted patents.

## IV.    Dismissal of Counts I, III, IV, VI, VII, IX, and XI–XIII should be with prejudice.

While the Court should freely give leave to amend when justice so requires, Fed. R. Civ. P. 15(a)(2), leave to amend would not be appropriate in this case.  When exercising its discretion to allow or deny leave, the court can consider a number of factors, such as "the futility of amending, the party's repeated failure to cure deficiencies by previous amendments, undue delay, or bad faith."  *United States ex rel. Marcy v. Rowan Cos., Inc.*, 520 F.3d 384, 392 (5th Cir. 2008).  Here, those factors weigh against amendment, at least as to the Counts based on public standards.

Another amendment of the HEVC and HLS claims would be futile.  Counts I, III, VI, VII, IX, XII, and XIII (HEVC) and IV and XI (HLS) are based exclusively on publicly available information, yet Dynamic Data has not articulated a plausible theory.  Assuming Dynamic Data performed an adequate pre-suit investigation, it should be able to adequately state its claims at this point.  The fact that it has not done so on its second attempt is telling.  Dynamic Data was

clearly on notice that its claims were implausible when it responded to Apple's first motion to dismiss.  Its repeated failure to address those deficiencies when all of the pertinent information is in its possession is inexcusable.  Another amendment would simply delay the inevitable and increase costs for Apple without any legitimate benefit to the case.

<u>**CONCLUSION**</u>

Dynamic Data has not stated plausible claims for direct, indirect, or willful infringement of any of the asserted patents.  Therefore, Apple respectfully requests that the Court dismiss all Counts pursuant to Rule 12(b)(6).  Apple requests that the dismissal of Counts I, III, IV, VI, VII, IX, and XI–XIII be with prejudice.

Dated: February 28, 2019

Respectfully submitted,

By: */s/   Clayton C. James*
          Clayton C. James

Clayton C. James (CO #26110)
clay.james@hoganlovells.com
Aaron Stafford Oakley (CO #43299)
aaron.oakley@hoganlovells.com
Katherine A. Nelson (CO #46315)
katherine.nelson@hoganlovells.com
Emmanuel C. Azih (CO #52594)
emmanuel.azih@hoganlovells.com
Katy L. Rankin (CO # 50133)
katy.rankin@hoganlovells.com
**HOGAN LOVELLS US LLP**
1601 Wewatta Street, Suite 900
Denver, CO 80202
Telephone:     (303) 899-7300
Facsimile:     (303) 899-7333

Melissa R. Smith (TX #24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450

Facsimile: (903) 934-9257

***Counsel for Defendant Apple Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2019, I electronically filed the foregoing document using the Court's ECF system which will electronically serve the same upon all counsel of record.

/s/   Clayton C. James
Clayton C. James